IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| STEVEN RINDNER<br>P.O. Box 59187<br>Potomac, MD 20859<br><br>Plaintiff,<br><br>v.<br><br>BESINS HEALTHCARE, INC.<br>Serve: Registered Agent, Jay A. Bua<br>607 Herndon Parkway, Suite 110<br>Herndon, VA 20170<br><br>BESINS HEALTHCARE NUTRITION, LLC<br>Serve: Registered Agent, Jay A. Bua<br>607 Herndon Parkway, Suite 110<br>Herndon, VA 20170<br><br>OLYMPIAN LABS, INC.<br>Serve: Registered Agent,<br>Corporation Service Company<br>2338 W. Royal Palm Road, Suite J<br>Phoenix, AZ 85021<br><br>LASALLE LABORATORIES, INC.<br>Serve: Registered Agent, Jay A. Bua<br>2201 Cooperative Way, Suite 600<br>Herndon, VA 20171<br><br>BHR PHARMA, LLC<br>Serve: Registered Agent,<br>Thomas W. McAllister<br>607 Herndon Parkway, Suite 110<br>Herndon, VA 20171<br><br>ASCEND THERAPEUTICS US, LLC<br>Serve: Registered Agent,<br>Besins Healthcare, Inc.<br>607 Herndon Parkway, Suite 110<br>Herndon, VA 20171<br><br>**Defendants.** | Case No.: 1:14CV355<br><br>TSE/JFA |

## CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Steven Rindner ("Rindner" or "Plaintiff") files this complaint against, Besins Healthcare, Inc., Besins Healthcare Nutrition, LLC, Olympian Labs, Inc., LaSalle Laboratories, Inc., BHR Pharma, LLC, and Ascend Therapeutics, LLC (collectively referred to as the "Defendants"). As and for Plaintiff's cause of action against the Defendants, Plaintiff states as follows:

## INTRODUCTION

1. Plaintiff brings this case against Defendants for breach of contract, violation of the Maryland Wage Payment and Collection Law, and for unjust enrichment.

2. Plaintiff is a seasoned executive with more than fifteen years of Executive level experience in some of the country's most well-known corporations.

3. In August 2010, Plaintiff signed a legal and enforceable agreement (the "**Contract**") supported by adequate consideration with Defendants to, among other duties, lead Defendants' nutrition business in the United States. The Contract is attached as Exhibit A.

4. During the term of the Contract, Plaintiff functioned as Chief Executive of defendants Olympian Labs, Inc. and Besin Healthcare Nutrition, LLC, and as a consultant to Besins Healthcare, Inc. and its other related entities.

5. On or around January 31, 2013, Defendants terminated Plaintiff's engagement under the Contract, citing a desire by the Besins family to "go in a different direction and to have the [Besins] boys lead the business."

6. Jay Bua, President, CEO, and Director of Besins Healthcare, Inc., commented to Plaintiff that Plaintiff was on the A-list yesterday and this decision did not make sense to him and that he was sure that it was the result of a "hatchet job by the [Besins] boys." Bua also commented to Plaintiff that "blood is thicker than water."

2

7. The Contract between Plaintiff and Defendants provided that, on the third anniversary of the Contract's effective date, Defendants were to pay Plaintiff a "Special Bonus" in the amount equal to two times the average of his annual earnings.

8. In the event that Defendants terminated the Contract without cause in the second year of the Contract, the Contract entitled Plaintiff to the full amount of the Special Bonus.

9. Plaintiff performed his duties during the course of his Contract and individuals throughout Defendants' organization routinely lauded his accomplishments. At no time did Defendants deem Plaintiff's work to be unsatisfactory.

10. Defendants terminated the Contract in the second year without cause.

11. Defendants refuse to honor the Contract and are withholding Plaintiff's Special Bonus. Defendants also refuse to reimburse Plaintiff for costs incurred during the performance of his duties.

12. Plaintiff is entitled to the full amount of the severance specified in the Contract, including but not limited to the Special Bonus, equitable and injunctive relief, interest, costs, attorney's fees, punitive damages, treble damages and any other relief this Court deems appropriate.

## THE PARTIES

13. Plaintiff is a citizen and resident of the state of Maryland.

14. Defendant Besins Healthcare Inc. ("**Besins**") is a corporation organized and operated under the laws of the State of Delaware. Its principal place of business is in Herndon, Virginia.

15. Defendant Besins Healthcare Nutrition, LLC ("**BHN**") is a limited liability company organized and operated under the laws of the Commonwealth of Virginia. Its principal place of business is in Herndon, Virginia. Its members are not citizens of Maryland.

16. Defendant Olympian Labs, Inc. ("**Olympian**") is a corporation organized and operated under the laws of the State of Arizona. Its principal place of business is in Phoenix, Arizona.

17. Defendant LaSalle Laboratories, Inc. ("**LaSalle**") is a corporation organized and operated under the laws of the State of Delaware. Its principal place of business is in Herndon, Virginia.

18. Defendant BHR Pharma, LLC ("**BHR**") is a limited liability company organized and operated under the laws of the State of Delaware. Its principal place of business is in Herndon, Virginia. Its members are not citizens of Maryland.

19. Defendant Ascend Therapeutics US, LLC ("**Ascend**") is a limited liability company organized and operated under the laws of Delaware. Its principal place of business is in Herndon, Virginia. Its members are not citizens of Maryland.

20. The Defendants, BHN, Olympian, LaSalle, BHR and Ascend are upon information subsidiaries of Besins.

## NON-PARTIES

21. Besins Healthcare SA ("**Besins Parent**") is a non-party multinational corporation headquartered in Bangkok, Thailand.

22. Antoine Besins is a non-party and is the President and Chairman of Besins Parent.

23. David Besins is a non-party and is a Chief Executive Officer of Olympian.

24. Nicolas Besins is a non-party and a Chief Executive Officer of Olympian.

4

## JURISDICTION AND VENUE

25. Jurisdiction is provided under 28 U.S.C. § 1332 as there is complete diversity of citizenship between Plaintiff and the Defendants and the amount in controversy well exceeds $75,000, exclusive of interest and costs.

26. Venue is proper under 28 U.S.C. § 1391 and this Court has personal jurisdiction over each of the Defendants because each of the Defendants transacts business in this judicial district and a substantial part of the acts or omissions that form the basis of this complaint occurred in this district and division.

## FACTUAL BACKGROUND

### Plaintiff Contracts with Defendants to Serve as Chief Executive in Defendants' United States Based Organizations

27. In or around June of 2010, Plaintiff entered into negotiations with Defendants to provide marketing and business development support for Defendants' presence in the United States.

28. Plaintiff and Jay Bua ("**Bua**") worked together to identify the terms of the Contract.

29. Bua told Plaintiff that Bua and Antoine Besins had started another business and were going to take it public. Shortly before going public, Antoine Besins made the decision to shut down the business.

30. Bua told Plaintiff that, "[i]f you are going to do this, you need to protect yourself," implying that if Plaintiff were going to work for Defendants, the Contract should include safeguards to protect him financially if Defendants abruptly terminated his agreement or decided to close the businesses.

5

31. Bua also noted that one of Plaintiff's responsibilities was to mentor the Besins boys and that that too was fraught with risks and needed to be protected in case of sudden decisions by the family. Such a sudden decision to end the relationship would impact the value of the engagement and Bua noted that Plaintiff needed to protect himself.

32. On August 1, 2010, Plaintiff and Defendants entered into the Contract.

33. Under the terms of the Contract, Plaintiff agreed to serve as an independent contractor for Besins and its subsidiaries and lead Defendants' nutrition business in the United States.

34. Defendants also required Plaintiff to, among other duties, consult on various matters relating to its pharmaceutical business.

**Plaintiff Performs Well and is Lauded by his Colleagues**

35. Plaintiff performed in full satisfaction of his obligations under the Contract.

36. In 2011, under Plaintiff's leadership, Olympian increased revenues from approximately $5,000,000 to approximately $7,500,000 per annum.

37. Plaintiff also spearheaded the development of Defendants' Pure Matters e-Commerce site.

38. Plaintiff reported directly to Bua and then to Leslie Grunfeld ("**Grunfeld**"), CEO of Besins Parent. Both Gua and Grunfeld routinely praised Plaintiff's performance.

39. Bua, impressed with Plaintiff's business acumen and overall performance, asked Plaintiff on many occasions to consider leaving Defendants' employ and to start a separate business in the healthcare industry with Bua and his son.

40. At no time during his retention was Plaintiff's performance less than satisfactory or called into question. In fact, Antoine Besins and Grunfeld told Mr. Rindner that they wished

he would consider and expand his role internationally and flew him to Bangkok and Brussels on more than one occasion to meet other members of the international team.

41. Antoine Besins and Grunfeld also asked the Plaintiff to "mentor" the "Besins' boys" (David Besins and Nicolas Besins) and get them ready for additional responsibilities. Antoine Besins and Grunfeld asked the Plaintiff to report on the performance of the Besins' boys and repeatedly recognized and appreciated the challenges that Mr. Rindner encountered with such a relationship.

## Defendants Reward Plaintiff's Good Performance by Increasing his Base Payment Rate, Providing him Performance Bonuses

42. When the Contract was initially executed, Defendants' contemplated that Plaintiff would work approximately four days per week and would work from his home office in Maryland.

43. Almost immediately in connection with the retention of Plaintiff, Defendants increased Plaintiff's job duties to the point where Plaintiff worked seven days per week, consulted across Defendants' various entities and business lines, and frequently needed to travel around the country and internationally.

44. In September 2010, Defendants asked Plaintiff to assist with Olympian and began paying Plaintiff an additional $8,400 per month for these services.

45. Plaintiff's increased job duties, including managing Olympian, which was based in Phoenix, AZ, and opening an office in New York City for Nicolas Besins, all of which required him to travel far more than was originally contemplated and to manage many more employees than originally contemplated under the Contract.

46. This increase in responsibilities led Defendants to increase Plaintiff's 2010 annual base payment for BHN alone to $315,000.

7

47. Bua, acting as an agent for Defendants, approved the increase to Plaintiff's base payment rate and signed each of Plaintiff's paychecks.

48. Plaintiff's contributions to Defendants' organizations led Bua to maintain the increases in Plaintiff's annual base payment rate for 2011 and 2012.

49. In 2011, Bua approved invoices submitted by Plaintiff and signed Plaintiff's paychecks.

50. Bua approved a 2011 bonus for Plaintiff in the amount of $90,000.

51. In 2012, Bua told Plaintiff to "Give yourself the same thing [as in 2011]" in reference to Plaintiff's bonus.

52. Plaintiff set aside only $82,000 for his bonus in 2011, not the full $90,000 as Bua instructed him.

53. In January 2011 Defendants paid Plaintiff through the payroll of Olympian at the annual rate of $100,800, and in May 2012, Defendants paid Plaintiff through the payroll system of BHN at the annual rate of $300,000.

54. Throughout the course of his engagement, Plaintiff received payments, as directed by Bua, drawn from the bank accounts of LaSalle, Olympian, Ascend and BHN.

### Defendants Terminated Plaintiff's Retention under the Contract Without Cause and Refuse to Honor the Agreement or Reimburse Him for Expenses

55. On or around January 31, 2013, Bua, on behalf of Antoine Besins and Grunfeld, terminated Plaintiff's retention under the Contract and told him that "the [Besins] family has decided to go in a different direction," or words to that effect.

56. On or around that same time, Bua told Plaintiff that Plaintiff was on the A-list yesterday and this decision did not make sense to him and that he was sure that it was the result

8

of a "hatchet job by the [Besins] boys." Bua also commented to Plaintiff that "blood is thicker than water."

57. Prior to his January 31, 2013 termination, Plaintiff's performance was never called into question.

58. Under the terms of the Contract, Plaintiff's retention by Defendants could be terminated for cause, defined by the Contract as a material breach of the Contract resulting in "material and demonstrable harm" to Besins.

59. Under the terms of the Contract, in the event of termination without cause, Plaintiff is entitled to the sum of one time of his "Annual Rate," any bonus earned "but not yet paid," and the "Special Bonus," defined as the amount equal to two times the average of Plaintiff's annual earnings.

60. Although Plaintiff's "Annual Base Rate" was set at $225,000 per annum, in 2011 and 2012 Defendants paid Plaintiff at the higher rate of $400,000 plus $81,000 bonus, setting Plaintiff's "Annual Rate" at $481,000.

61. Plaintiff received only $72,393 of his 2012 bonus of $81,000.

62. The amount of the "Special Bonus", defined by the Contract as the amount equal to two times the average of Plaintiff's annual earnings, is $971,000.

63. Because Plaintiff never breached the Contract and Defendants terminated Plaintiff without cause, Plaintiff is entitled to the total payment of $1,452,000.

64. Prior to his termination, Plaintiff incurred business-related expenses totaling $10,928.95

65. Though Plaintiff submitted an invoice and expense report as was customary with his position, Defendants refuse to reimburse Plaintiff for these expenses.

66.     Defendants also refuse to pay Plaintiff for his accumulated vacation time, totaling approximately four weeks.

## COUNT I – Breach of Contract

67.     Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

68.     On August 1, 2010, Plaintiff signed the Contract to provide services to Besins and its subsidiaries.

69.     The Contract is a valid and enforceable agreement supported by adequate consideration.

70.     Bua, acting within the scope and course of his agency and employment, executed the Contract with Plaintiff on behalf of Besins and its subsidiaries.

71.     Plaintiff performed all of the conditions and duties required of him to be performed in accordance with the terms of the Contract.

72.     Plaintiff performed his duties under the Contract and at no time was Plaintiff's performance deemed unsatisfactory.

73.     Plaintiff's engagement was terminated without cause, and Plaintiff is therefore entitled to the full amount of his retention agreement, including a "Special Bonus," in the amount of no less than $1,452,000 and a portion of his 2012 annual bonus totaling $8,607.

74.     Defendants, by failing to pay Plaintiff his Special Bonus and annual bonus, are in breach of the Contract with Plaintiff.

75.     The Contract contemplates "Besins Healthcare, Inc. and its subsidiaries" as parties to the Contract. As such, Plaintiff is in privity of contract with all Defendants' organizations that were subsidiaries to Besins at any time during Plaintiff's engagement.

76.     Plaintiff has suffered damages as a direct and proximate result of Defendants breach of contract in an amount to be determined at trial, but in no event less than $1,452,000.

## COUNT II – Unjust Enrichment

77.     Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

78.     Under Maryland law, unjust enrichment shall be found where a benefit is conferred upon the defendant by the plaintiff, the defendant has knowledge of such benefit, and the defendant accepts the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

79.     Plaintiff negotiated the terms of the Contract to allow for annual performance bonuses and a "Special Bonus" in the amount of two times the average of Plaintiff's annual earnings.

80.     Plaintiff negotiated for the annual performance bonuses and the "Special Bonus" to be payable even if Defendants terminated his engagement, so long as such termination was not for cause.

81.     Plaintiff performed the services required of him and conferred significant benefit to Defendants' organizations.

82.     Defendants are fully aware of and accepted the benefit of Plaintiff's services.

83.     The full value of Plaintiff's services is equal to his annual rate plus all agreed upon bonuses contemplated by the Contract.

84.     Because Defendants refuse to pay Plaintiff the agreed upon bonuses, Defendants received benefit for which they did not pay and Plaintiff has suffered damages no less than $1,452,000 as a result.

## COUNT III – Violation of Wage Payment and Collection Law
## Md. Code Ann., Lab. & Empl. § 3-501, *et seq.*

85. Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

86. Plaintiff is a resident and a citizen of the State of Maryland.

87. The Contract contemplates Plaintiff executing a substantial part of his duties from his home office in Potomac, Maryland, and as such, Plaintiff is protected by Maryland's Wage Payment and Collection Law, § 3-501, *et seq.*, of the Labor and Employment Article ("Maryland Wage Law").

88. Defendants have intentionally and willfully withheld from Plaintiff his severance, including the "Special Bonus," in the amount of no less than $1,452,000 and a portion of his 2012 annual bonus totaling $8,607 as contemplated by the Contract.

89. Defendants have also intentionally and willfully withheld from Plaintiff compensation for earned and accrued but unused leave.

90. Defendants' actions are willful and not the result of a bona fide dispute.

91. In excess of two weeks have elapsed from the date on which the compensation described above should have been paid to Plaintiff.

92. As a direct and proximate result, Plaintiff has suffered damages under Maryland's wage law and is entitled to recover those damages, trebled, plus attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rindner prays this Honorable Court for Judgment against Defendants for economic, compensatory, and punitive damages; treble damages; reasonable attorney's fees; costs of this action; an award of interest; any and all appropriate equitable and

injunctive relief; and such further and additional relief as this Court deems just and proper to award.

## JURY DEMAND

Plaintiff demands a trial by jury for any and all issues proper to be so tried.

Dated: April 3, 2014

**Respectfully submitted,**

Bernard J. DiMuro, Esq. VSB #18784
Miles Jarrad Wright, Esq. VSB #68814
*Counsel for Plaintiff Steven Rindner*
DiMuroGinsberg, PC
1101 King Street, Suite 610
Alexandria, Virginia 23314
Telephone: (703) 684-4333
Facsimile: (703) 548-3181
E-mail: bdimuro@dimuro.com
mjwright@dimuro.com